FILED        LODGED
RECEIVED        COPY

JAN 0 3 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT
## for the
### District of Arizona

_____ Division

| | | |
|---|---|---|
| Michael Wade Bergstrom<br>Lynn Marie Polzin | ) ) ) ) | Case No.    **CV23-00006-PHX-SMM** |
| | ) ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Carrington Mortgage Services LLC
Jordan Elise Properties LLC

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

## COMPLAINT AND REQUEST FOR INJUNCTION

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| Name | Michael Bergstrom | Lynn Polzin |
|---|---|---|
| Street Address | 5627 W. Saguaro Drive. | 5627 W. Saguaro Dr. |
| City and County | Glendale in Maricopa County | Glendale, Maricopa |
| State and Zip Code | Arizona. 85304. | Arizona, 85304 |
| Telephone Number | 602-300-3924 | 602-488-2862 |
| E-mail Address | michaelbergstrom8@gmail.com | lynn.polzin@yahoo.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1

Name — Carrington mortgage services

Job or Title *(if known)* —

Street Address — 1600 South Douglass Road, Suites 110 & 200-A

City and County — Anaheim

State and Zip Code — CA 92806.

Telephone Number — 800-561-4657

E-mail Address *(if known)* —

Defendant No. 2

Name — Jordan Elise Properties, LLC

Job or Title *(if known)* —

Street Address — 15125 N Scottsdale Rd, #411

City and County — Scottsdale Maricopa

State and Zip Code — Arizona 85254

Telephone Number — Unknown, Not Available

E-mail Address *(if known)* —

Defendant No. 3

Name —

Job or Title *(if known)* —

Street Address —

City and County —

State and Zip Code —

Telephone Number —

E-mail Address *(if known)* —

Defendant No. 4

Name —

Job or Title *(if known)* —

Street Address —

City and County —

State and Zip Code —

Telephone Number —

E-mail Address *(if known)* —

**II.    Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
CARES Act Public Law No. 116-136; Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531 and 5536(a)(1)(B); Fair Credit Reporting Act (FCRA) § 623(a)(1)(F)(ii), 15 U.S.C. § 1681s-2(a)(1)(F)(ii); A.R.S. 44-152; RESPA Regulation X, Regulation Z;

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

      b.     If the defendant is a corporation

           The defendant, *(name)* _____, is incorporated under

           the laws of the State of *(name)* _____, and has its

           principal place of business in the State of *(name)* _____ .

           Or is incorporated under the laws of *(foreign nation)* _____ ,

           and has its principal place of business in *(name)* _____ .

      *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

      The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

      Value of the property is estimated around $575,000 and Plaintiffs' equity in the home was around $300,00.

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     Where did the events giving rise to your claim(s) occur?

     Arizona

B.     What date and approximate time did the events giving rise to your claim(s) occur?

     11/15/2022

C.     What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*
Please see Attachment 1.
Plaintiffs respectfully request the patience of the Court and apologize in advance if filing is incorrect in any way. Much time and effort was devoted to avoiding this but legal knowledge and experience is limited or nonexistent.

## IV.     Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.
It is understood that generally the Courts recognize loss of a home as irreparable injury. Additionally our household consists of 7 people including 2 children and a disabled senior citizen. We have owned out home for 12 years. Over the past 2 years a great deal of effort and time was committed to fixing damages caused by a flood estimated at $35,000-$60,000 ourselves. Monetary compensation would not undo the damages done to the members of our family if we lose our home.

## V.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
Plaintiffs are seeking injunctive and declaratory relief in overturning the sale of our home and prohibiting legal action to enforce the sale, take possession of the property, or sell the property during litigation and any mediation.

Plaintiffs are seeking actual, punitive, statutory, and exemplary damages, civil penalties, legal fees, and compensatory damages as the court sees fit. For the sake of time this is not the focus as the pressing issues involve the relief sought from the court. Plaintiffs hope to find legal aide or counsel.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    _12-30-2022_

Signature of Plaintiff    _____

Printed Name of Plaintiff    _Michael Bergstrom  Lynn Polzin_

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney    _____
Printed Name of Attorney    _____
Bar Number    _____
Name of Law Firm    _____
Street Address    _____
State and Zip Code    _____
Telephone Number    _____
E-mail Address    _____

# ATTACHMENT 1

1. On 11/15/2022 property owned by plaintiffs was sold at auction  by loan servicer Carrington Mortgage Services (CMS) and was purchased by Jordan Elise LLC unbeknownst to plaintiffs. This came as a complete surprise due to misinformation provided by CMS written and verbally, borrowers believing they were actively working on loss mitigation with servicer along with uncertainty about forbearance status, and being unaware that notifications regarding possibility of auction sale received over 9 months earlier still applicable and considered sufficient/legal notice. Plaintiffs assert that foreclosure was handled illegally and done in error. Therefore the validity of the sale is in question with the belief that the foreclosure was wrongful and should be overturned.

2. Plaintiffs requested and were granted forbearance from 2/1/2022 by CMS (Exhibit 1) and first filing for foreclosure was made on 2/3/2022 (Exhibit 1a) in strict violation of section 4021 of the CARES Act; 15 U.S.C. 1681s-(2)(a)(1)(F)(ii); FCRA 623(a)(1)(F)(ii). CMS told Plaintiffs that account was in forbearance (Exhibit 1) as requested and required but did not actually place account in forbearance (Exhibit 2 with a forbearance statement for reference) and it is believed that if account was updated accurately foreclosure sale would not have occurred as this would have alerted appropriate personnel/agencies of procedural issues occurring resulting in error of sale and invalidating auction. It is unknown why CMS predated forbearance but it was their responsibility to address filing first notice for foreclosure within forbearance timeframe. This would have delayed first

filing for 7 months if laws were upheld but instead the loan was not placed in forbearance status.

3. In November of 2022 mailings received from CMS included only 11/2022 mortgage statement along with a statement dated 10/21/2022 informing of the need to reach out to CMS by 11/18/2022 to discuss alternative options to foreclosure which are required options (Exhibit 3) but auction was held on 11/14/2022. This misrepresentation of the facts violates A.R.S. 44-152; CFPA 12 U.S.C.5331, 5336 and was another contributing factor to auction being a shock. Plaintiffs admit delaying immediate outreach beyond 11/1/2022 to CMS until finishing HAF application to notify of submission as recommended but we were also completely unaware of auction date. HAF unknown to borrowers until the end of 10/2022 although disclosure of this was required by FHA over 15 months prior (Exhibit 4(4.)) in violation of RESPA 1024.38(b)(I)(ii). CMS never told us of this option over numerous calls throughout 2022. This is important because loan modification represented as only alternative to paying arrears in full and increased: payments by $200, interest more than 1%, and principal balance by $36,000 by the time one was finally offered. Plaintiffs hoped receiving HAF funds would decrease these values significantly as the goal was to be sure default on loan did not occur again. Plaintiffs believe that this was reasonable action given the terms of the modification and circumstances and relates to Dodd-Frank Act 1024; 1025(b)(1); 12 U.S.C. 5531, 5536 (a) (1)(B).

4. Plaintiffs assert sale of home should be overturned based on breach of contract related to Deed of Trust (Exhibit 5) and/or unconscionable acts committed by CMS in respect to the amount of "bad faith" actions related to loan modifications options and information that were required but not provided. Deed of Trust as well as applicable statutes in the state of Arizona require federal and state laws to be upheld related to the foreclosure process but there were many consumer protection law violations in order for this auction to occur. Plaintiffs believe that mortgagee tricked, mislead, and misinformed mortgagor to gain an advantage and misused the loan modification process to foreclose in bad faith in violation of laws and in turn violating contractual obligations under Deed of Trust resulting in an error of sale. This forced Plaintiffs to the point of foreclosure and will be detailed in complaint. Plaintiffs feel this was not only negligent but fraudulent misrepresentation and violated rights and protections Plaintiffs were entitled to under the CARES Act, RESPA, CFPA, FCRA, and A.R.S. 44-152. In an attempt to figure out how a home can be auctioned off and the owner not see it coming research began and CFPB action against CMS (Exhibit 6) was found two days later which provided a base of information to work from.

5. CMS acted in bad faith and committed unfair business practices through misleading, misrepresenting, and omitting information necessary for Plaintiffs to resume making payments for a very extended period of time. Regulation X and Regulation Z under RESPA require servicers to adhere to requirements of the Owner of government backed home loans. CMS violated requirements numerous times:

A.) Plaintiffs strongly believe modification applications done 2/2021 and 6/2021 contained most recent information requested within the applications however around 12/15/2022, a month after auction date) this information was removed from accessible documents on CMS website and can not be provided without cooperation from CMS at this time but a letter from CMS regarding one application will be included. (Exhibit 7). This is relevant because it shows intent and effort to resume making payments and a completed application would have offered more protection for borrowers and increased requirements of servicer under CFPA. Other loan related documents that were removed from CMS website in the weeks following the auction include 11/2022 mortgage statement, the denial for the February 2021 application and loss mitigation letters related to 6/2021 application.

B.) On 2/16/2021 one  FHA requirement (effective immediately rather than the typical 90 days) was evaluation of all delinquent owner-occupants that had submitted a loss mitigation application for a home retention option within 120 days of receiving the application (Exhibit 8). Eligibility was borrower stating they could make modified payment but this was never offered. Plaintiffs feel the following information is of extreme importance because it shows the Plaintiffs intent of seeking resolution and the intent of CMS through their response and ultimately the outcome is evident through Exhibit 7. This is because it proves 1. the Plaintiffs attempting to resume payments and find resolution 2. CMS's intent as their response was not in line with the goals of the FHA/HUD attempting to help homeowners continue to be homeowners by offering more

options, removing restrictions, and making the process easier than ever before as stated in numerous mortgagee letters. Our application submitted on 3/1/2021 already supplied much more information than was necessary for the Owner of our loan to make a decision about a modification option because the simple requirements of occupying the home and having requested assistance through the application qualified us for an evaluation of the Owner-Occupant Loan Modification. Instead the servicer responsible for submission of our request for help to the Owner of our loan unjustifiably requested more information completely ignoring FHA requirements, obstructed our opportunity for resolution, violated our rights/protections, and eventually denied our application as "incomplete". We believe the intent is clear through the ultimate outcome. Instead of providing this option 18 months later the modification offered was more than double the interest rate, the amount already owed continued to accrue interest at a nearly 2% higher rate than would've been offered, the amount owed continued to climb, and payments would be hundreds higher rather than hundreds lower. Exhibit 7 proves this error because rather than evaluation for and offer of the available option more information was requested unnecessarily. If requirements were followed following FHA guidelines this option would have resulted in a payment decrease from $1229 to $865 (this is with all fees) and is detailed in Exhibit 9. Plaintiffs wouldn't like to impress upon the court that this situation could have, should have, and would have been resolved at this point.

C.) An application was not necessary by June of 2021 but another one was submitted since borrowers were not aware of this. FHA guidelines required evaluation for the ALM

modification for all borrowers at least 90 days delinquent, required no borrower contact, and executed documents were to be mailed (Exhibit 10). It is believed the loan was automatically placed into forbearance 6/2021 since an application was submitted which then required evaluation for ALM by 10/31/2021 since that was within 30 days of forbearance ending. Following FHA guidelines this loan would've qualified for this option resulting in payments decreasing from $1,229 to $930 with a significant interest rate reduction of more than 2% which again obviously would have impacted CMS profits over the life of the loan and this is detailed in Exhibit 11 following FHA guidelines. If this had been done as required foreclosure proceedings (and subsequent costs) would not have initiated.

D.) In 2022 communication shifted from online options to telephonic since attempting online failed. Although there were numerous live contacts no modification options were explained or offered until around June of 2022 but a forbearance was. Again, forbearance in 2022 came with the requirement of evaluation for loan modification options but now within 120 days prior to expiration of forbearance which ended on 7/31/2022 and would result in an option by 4/31/2022. (Exhibit 12). This would have resulted in lower payments than what was ultimately offered 3 months later as arrears and interest rates increased significantly every month.

These qualify as deceptive and abusive acts, unfair practices as defined by the CFPB ,as clearly defined in Exhibit 13, unconscionable acts and was a breach of fiduciary duty.

This is in violation of A.R.S. 44-152; 12 U.S.C. §§ 5531, 5536(a)(1)(B); Regulation X under RESPA. Please note none of this was realized until after auction had occurred.

6. CMS was required to inform plaintiffs of loss mitigation options, actions required of borrowers, and HAF option during live contact as well but did not during numerous telephonic interactions in violation of CFPA 1024.39; CFPA 1024.40(b)(1)(i)(ii). Again, the FHA specifically required disclosure of HAF option in 7/2021 and this was not ever verbally shared throughout 2022 while Plaintiff's were relying on information provided during phone calls. Being aware of these options was absolutely necessary and essential to resolving arrears. While Plaintiffs can't show proof of content of these conversations we feel that documentation provided supports this fact. This is also consistent with findings of CFPB investigation (Exhibit 6). Plaintiffs feel it's of high importance to share that arrears owed was a heavy burden and an extremely stressful issue that we were eager and actively attempting to resolve. Our understanding was that many people found themselves in the same situation and the assumption was that the extremely long and drawn out process wasn't abnormal. Additionally borrowers past experience in obtaining a loan modification took around 9 months total and this was at a time with drastically fewer borrowers seeking assistance.

7. CMS used the term forbearance loosely and interchangeably with periods of time auction date had been postponed. A call recorded on 11/18/2022 with a CMS representative is an example of this and can be provided when requested. This ongoing inconsistent misinformation became confusing and mislead plaintiffs to believe their

home was safe and greatly contributed to how auction being held came as a complete shock. It wasn't until after the auction that we even realized how confused and unsure we were when attempting to identify forbearance timelines as CMS would not provide this information as requested.

8. Jordan Elise LLC is not accused of any wrongdoing. There is a balance of inequity that occurs as Plaintiffs loose $300,000 in equity while Jordan Elise LLC stands to profit roughly the same amount since the property sold for less than half of the value of the home raising the issue of the adequacy of the sale price. Windfall profits like these should come with the understanding that there was a contract between the seller of the home and the borrower and thus comes with the possibility of error of sale or inherent risks involved.

9. Homeownership is one of the most important goals people attempt to achieve, it is the essential factor to personal success and wealth of the American public, and shelter is essential for families. The laws cited in this motion are intended ensure the public is treated fairly, honestly, and justly. It is a personal view that this motion and others like it, in the relatively rare circumstances where wrongdoing is shown, is not only in the best interest of the public but is essential to public interest.

# EXHIBIT 1

**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID 92600

P.O. Box 3010
Anaheim, CA 92803

**COVID-19 Forbearance Letter**

0007801   01 SP 0.580 **SNGLP T3 T 9133 85304    -C01-P07808-!
MICHAEL W BERGSTROM
5627 W SAGUARODR
GLENDALE AZ 85304



Loan Number: 7000295219

ılıılıılıılıllıllıllıllıllılıllıllıllıllıllıllıllıllıllı

02/08/2022

Re: COVID-19 Pandemic Forbearance Plan

Dear Borrower(s):

On 02/04/2022, you notified Carrington Mortgage Services, LLC ("Carrington") that you have been impacted by the COVID-19 pandemic. For this reason, we are placing your loan into a payment forbearance plan beginning 02/01/2022 for an initial 3 month(s) (the "forbearance period"). Carrington is offering this forbearance based on the evaluation of an incomplete loss mitigation application, and you have the option to submit a complete loss mitigation application to receive an evaluation for all loss mitigation options available to you regardless of whether you accept this forbearance plan. We understand that these are difficult times, and we are here to help.

Please see the outline below on what this means to you and what to expect as next steps:

- You will not be required to make your regular monthly mortgage payments during the forbearance period.
- This forbearance plan is based solely on your affirmation that you are impacted by the COVID-19 pandemic. By accepting this forbearance plan, you are affirming that you have been impacted by the COVID-19 pandemic. Impacts include loss of income, reduction of income, and/or illness to you or an immediate family member.
- Acceptance of this plan is defined by not making your regular monthly payments during the forbearance period. **If you accept this plan and you are set up on automatic drafts, you need to notify us and request to cancel your draft. Please call or email your request to cancel to COVIDACHcancellationrequest@carringtonms.com at least three (3) business days before your payment is due to be drafted.** If you have recurring drafts set up with your financial institution, we recommend you notify them to stop future automatic payments while you are on a forbearance plan.
- If you do not have an escrow account with Carrington, you should continue to make payments for your property taxes and insurance when those payments become due.
- It is important to understand that all monthly payments that are suspended during the forbearance period and not due in accordance with the original terms of your mortgage are not forgiven and you will have to repay those payments eventually. **Carrington offers other loss mitigation options and will work with you on all available options in order to bring your loan current. <u>You have the option to submit a complete loss mitigation application to receive an evaluation for all loss mitigation options and you will be notified in writing of the option(s) available to you.</u>** Please reach out to our Loss Mitigation Department at the contact information below for information on how to submit a loss mitigation application.
- During the final month of your forbearance period, we will reach out to you to determine your current financial condition and ability to resume making mortgage payments. If you are unable to resume making monthly payments at the end of your forbearance plan, you may be eligible for an extension. Our outreach may be by phone, email, or regular mail, so please be responsive so we can assist you before your forbearance period expires.
- As of the effective date for which your forbearance period is granted, any payments that come due during the covered period that are not paid will not be reported as late payments to the credit reporting agencies. During the forbearance

T.S. No.: 22 - 26095

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document

**State of California }ss**
**County of Orange}**

On 2 / 3 / 2022 before me, **Brian Jonathon Carrillo**, Notary Public, personally appeared **Tai Alailima, Director** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)
    **Brian Jonathon Carrillo**

BRIAN JONATHON CARRILLO
Notary Public - California
Orange County
Commission # 2319948
My Comm. Expires Jan 28, 2024

Unofficial Document

# CARRINGTON
## MORTGAGE SERVICES, LLC
### NMLS ID #2600

P.O. Box 3010
Anaheim, CA 92803

0031792    01 SP 0.600  **SNGLP  T9 1 9265 85304    -C01-P31823-I
MICHAEL W BERGSTROM
5627 W SAGUARODR
GLENDALE AZ 85304

**Property Address:**
5627 W SAGUARO DR
GLENDALE, AZ 85304

Loan Number: 7000295219

07/12/2022

# COVID-19 Forbearance Period Ending

Dear MICHAEL W BERGSTROM

Carrington Mortgage Services, LLC ("Carrington") placed you on a COVID-19 forbearance plan after you informed us that you had been experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency. **It is important to understand that your COVID-19 forbearance plan is [set to expire or expiring] on 07/31/2022 and Carrington is unable to further extend your period of forbearance.** However, as described in this letter, we can still work with you to find a solution for resolving any remaining hardship and dealing with the payments not made during your period of forbearance.

## <u>How to Request Post Forbearance COVID Loss Mitigation Review</u>

**It is critical that you contact us so that we can help you navigate the next steps and evaluate you for COVID-19 loss mitigation options that may be offered by your investor with very limited to no documentation required. Qualification for COVID-19 loss mitigation options will be based on an incomplete loss mitigation application.**

**We have an online process on our website that will allow you to provide an update without having to call us – just walk through some simple questions and you can provide an update specific to your loan and situation.** The process can be completed in just a few minutes.

We recommend that you create an online profile on our website by visiting http://www.carringtonmortgage.com/login and navigate to the "New Customer" section and select "Get Access". Click on "Register my Loan" and complete the process. We strongly recommend you not opt out of receiving emails as this is the way we plan to communicate with you during the process. Once you <u>complete the registration process, please complete the steps below to launch and complete the questionnaire. Once you submit your update, it will be sent directly to our Loss Mitigation Department for processing.</u>

1. Sign in to your account by clicking on the Customer Login button;
2. Click on "COVID-19 Assistance" at the top of the next page; and,
3. Click on "Submit Your Update" to begin the questionnaire.

If you are unable to create an online account or if you prefer to speak to a representative directly, please contact us.

9265-01-00-0031792-0001-0066339



**CARRINGTON**
MORTGAGE SERVICES, LLC
NMLS ID #2600

P.O. Box 3010
Anaheim, CA 92803



0004050   01 AB 0.461 **AUTO  T4 2 9154 85304-387327  -C01-P04054-I
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE AZ 85304-3873

Loan: 7000295219

ı|ı|ıı··ıı|ı|ı|ıı··ıı|ı|ı|ııı··ı|ı|ı|ıı|ıı··ı|ıı|ı|ıı··ı|

03/03/2022

Dear Borrower(s):

Carrington Mortgage Services, LLC ("Carrington") previously placed you on a forbearance plan because you informed us that you had been adversely impacted by the COVID-19 pandemic. Your current forbearance plan will be ending on **04/30/2022** and we need an update from you regarding your financial situation and whether you are able to resume making your monthly mortgage payments. It is important that you respond to us as soon as possible so we can assist you with the next steps including extending your forbearance plan (if available). **If you have already notified Carrington of your current financial situation and are actively working with us on a loss mitigation option, you may ignore this notice.**

Call volumes have been higher than normal due to the number of impacted customers. If you have had difficulty reaching one of our representatives on the phone, we apologize for the inconvenience. **We have an online process on our website that will allow you to provide an update without having to call us – just walk through some simple questions and you can provide an update specific to your loan and situation.** The process can be completed in just a few minutes.

We recommend that you create an online profile on our website by visiting www.carringtonmortgage.com/login and navigate to the "New Customer" section and select "Get Access". Click on "Register my Loan" and complete the process. We strongly recommend you not opt out of receiving emails as this is the way we plan to communicate with you during the process. Once you complete the registration process, please complete the steps below to launch and complete the questionnaire. Once you submit your update, it will be sent directly to our Loss Mitigation Department for processing.

1. Sign in to your account by clicking on the Customer Login button;
2. Click on "COVID-19 Assistance" at the top of the next page; and,
3. Click on "Submit Your Update" to begin the questionnaire.

If you are unable to create an online account or if you prefer to speak to a representative directly, you may call us at 800-561-4567 Monday through Friday between 9:00 AM and 7:00 PM EST. Please make sure to have your loan number available when you call.

Carrington remains committed to doing everything we can for our impacted customers during this difficult time. We hope that you and your family stay safe and healthy while we work through the economic and health challenges our country is facing today.

Sincerely,

Loss Mitigation

LM725                                        7000295219                                        Page 1 of 4

9154-01-00-0004050-0001-0008646

# EXHIBIT 2



**P.O. Box 5001**
**Westfield, IN 46074**

# Monthly Mortgage Statement

0061758  01 AB 0.461  **AUTO  T6 0 9765 85304-387327  -C03-P00000-I



MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE  AZ 85304-3873

|  |  |
|---|---|
| Statement Date | 02/17/22 |
| Account Number | 7000295219 |
| **Amount Due** | **$33,006.57** |
| Due Date: | 03/01/22 |

If payment is received after 03/16/22, a $0.00 late fee will be charged.

**Contact Us:**
📞 800-561-4567   📠 800-486-5134
🖥 www.CarringtonMortgage.com

## Account Information

Property Address:
5627 W SAGUARO DR
GLENDALE AZ 85304

Interest Rate: 4.625%
Prepayment Penalty: No

Modification Date: 08/01/2018
Maturity Date: 07/01/2048

### DELINQUENCY NOTICE

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. See additional comments related to the Delinquency Box on page 2.

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $219.25 |
| Interest: | $522.96 |
| Escrow: | $487.55 |
| (Taxes and/or Insurance)* | |
| **Reg. Monthly Payment:** | **$1,229.76** |
| Overdue Payment: | $31,246.81 |
| Total Fees Charged: | $530.00 |
| **Total Amount Due:** | **$33,006.57** |

## Current Loan Balances

| | |
|---|---|
| Principal Balance*: | $140,703.29 |
| Escrow Balance: | -$11,485.28 |
| Past Due Balance: | $31,246.81 |
| Deferred Balance(s): | N/A |
| Buydown Balance: | N/A |
| Partial Claim: | N/A |
| Negative Amortization: | N/A |
| Unapplied Funds: | $0.00 |

*Your current Principal Balance is not a payoff quote.
See page 4 for Loan Payoff Information.

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance)* | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

* Please see page 4 of this statement for additional information.

---

▲ Please detach and return with your payment ▲



Make a payment at **CarringtonMortgage.com.**
Pay by Check or AutoPay for free!

Loan Number: 7000295219
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE AZ 85304

| | |
|---|---|
| **Amount Due** | **$33,006.57** |
| Due Date: | 03/01/22 |
| Late charge if received after 03/16/22: | $0.00 |
| Late Payment Amount if received after 03/16/22: | $33,006.57 |

CARRINGTON MORTGAGE SERVICES LLC
PO BOX 660586
Dallas, TX 75266-0586

| | | |
|---|---|---|
| Payment Due | $ | . |
| Additional Principal | $ | . |
| Additional Escrow | $ | . |
| Late Charge | $ | . |
| Total Amount Enclosed | $ | . |

0660586700029521900330065700330065 77



P.O. Box 5001
Westfield, IN 46074

# Monthly Mortgage Statement

0058566  01 AB 0.425  **AUTO  T6 0 9615 85304-387327  -C01-P58624-I



MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE AZ 85304-3873

‖₁‖₁‖ᵢ‖‖ᵢ‖‖₁₁‖‖‖ᵢₙ‖ᵢ‖ₙ‖ₙᵢₙ‖ₙ‖ₙᵢₙᵢ‖₁ₙ‖ᵢₙᵢ‖₁ᵢ‖

| | |
|---|---|
| Statement Date | 04/17/21 |
| Account Number | 7000295219 |
| **Amount Due** | **$20,022.13** |
| Due Date: | 05/01/21 |

If payment is received after 05/16/21, a $51.02 late fee will
be charged.

**Contact Us:**
☎ 800-561-4567    🖨 800-486-5134
🖳 www.CarringtonMortgage.com

## Account Information

Property Address:
5627 W SAGUARO DR
GLENDALE AZ 85304

Interest Rate: 4.625%
Prepayment Penalty: No

Modification Date: N/A
Maturity Date: 07/01/2048

### DELINQUENCY NOTICE

**You are late on your mortgage payments. Failure to
bring your loan current may result in fees and
foreclosure – the loss of your home. See additional
comments related to the Delinquency Box on page 2.**

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $210.98 |
| Interest: | $531.23 |
| Escrow: | $533.37 |
| (Taxes and/or Insurance)* | |
| **Reg. Monthly Payment:** | **$1,275.58** |
| Overdue Payment: | $18,695.58 |
| Total Fees Charged: | $50.97 |
| **Total Amount Due:** | **$20,022.13** |

## Current Loan Balances

| | |
|---|---|
| Principal Balance*: | $140,703.29 |
| Escrow Balance: | -$6,761.80 |
| Past Due Balance: | $18,695.58 |
| Deferred Balance(s): | N/A |
| Buydown Balance: | N/A |
| Partial Claim: | N/A |
| Negative Amortization: | N/A |
| Unapplied Funds: | $0.00 |

* Your current Principal Balance is not a payoff quote.
See page 4 for Loan Payoff Information.

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance)* | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

* Please see page 4 of this statement for additional information.

⚠ Please detach and return with your payment ⚠



Make a payment at **CarringtonMortgage.com**.
Pay by Check or AutoPay for free!

Loan Number: 7000295219
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE AZ 85304

**Amount Due**    **$20,022.13**
Due Date:    05/01/21

Late charge if received after 05/16/21:    $51.02
Late Payment Amount if received after 05/16/21:    $20,073.15

‖₁‖₁‖ᵢ‖‖ᵢ‖ᵢ‖₁‖‖ᵢₙ‖ᵢ‖‖ₙᵢ‖ᵢᵢ‖‖ᵢ‖ᵢₙᵢₙ‖₁ᵢ‖
CARRINGTON MORTGAGE SERVICES LLC
PO BOX 660586
Dallas, TX 75266-0586

| | |
|---|---|
| Payment Due | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Charge | $ |
| Total Amount Enclosed | $ |

0660586700029521900200221300200731 50



P.O. Box 5001
Westfield, IN 46074

# Monthly Mortgage Statement

NMLS ID #2600

0059544  01 AB 0.491  **AUTO  T0 0 9621 85304-387327  -C03-P00000-I

| | |
|---|---|
| Statement Date | 07/18/22 |
| Account Number | 7000295219 |



MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE  AZ 85304-3873

## Amount Due          $40,736.80

Due Date:                            08/01/22

If payment is received after 08/16/22, a $0.00 late fee will be charged.

**Contact Us:**
📞 800-561-4567   📠 800-486-5134
✉ www.CarringtonMortgage.com

## Account Information

**DELINQUENCY NOTICE**

Property Address:
5627 W SAGUARO DR
GLENDALE AZ 85304

Interest Rate: 4.625%
Prepayment Penalty: No

Modification Date: 08/01/2018
Maturity Date: 07/01/2048

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. See additional comments related to the Delinquency Box on page 2.

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $223.51 |
| Interest: | $518.70 |
| Escrow: | $494.38 |
| (Taxes and/or Insurance)* | |
| **Reg. Monthly Payment:** | **$1,236.59** |
| Overdue Payment: | $39,500.21 |
| Total Fees Charged: | $0.00 |
| **Total Amount Due:** | **$40,736.80** |

## Current Loan Balances

| | |
|---|---|
| Principal Balance*: | $140,703.29 |
| Escrow Balance: | -$12,531.95 |
| Past Due Balance: | $39,500.21 |
| Deferred Balance(s): | N/A |
| Buydown Balance: | N/A |
| Partial Claim: | N/A |
| Negative Amortization: | N/A |
| Unapplied Funds: | $0.00 |

* Your current Principal Balance is not a payoff quote.
See page 3 for Loan Payoff Information.

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance)* | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

* Please see page 3 of this statement for additional information.

---

▲ Please detach and return with your payment ▲



NMLS ID #2600

Loan Number: 7000295219
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE  AZ 85304

## Amount Due          $40,736.80
Due Date:                            08/01/22

Late charge if received after 08/16/22:                         $0.00
Late Payment Amount if received after 08/16/22:      $40,736.80

Make a payment at **CarringtonMortgage.com.**
Pay by Check or AutoPay for free!

CARRINGTON MORTGAGE SERVICES LLC
PO Box 7015
Pasadena, CA 91109-7015

| | |
|---|---|
| Payment Due | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Charge | $ |
| Total Amount Enclosed | $ |



P.O. Box 5001
Westfield, IN 46074

# Monthly Mortgage Statement

0066055  01 AB 0.425  **AUTO  T2 0 9596 85304-387327  -C03-P00000-I

MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE  AZ 85304-3873

| | |
|---|---|
| Statement Date | 06/17/21 |
| Account Number | 7000295219 |
| **Amount Due** | **$22,618.49** |
| Due Date: | 07/01/21 |

If payment is received after 07/16/21, a $0.00 late fee will be charged.

**Contact Us:**
☎ 800-561-4567   ☎ 800-486-5134
✉ www.CarringtonMortgage.com

## COVID-19 FORBEARANCE NOTICE

You are currently on a COVID-19 Forbearance Plan. See additional information related to COVID-19 Forbearance Notice on page 2.

## Account Information

Property Address:
5627 W SAGUARO DR
GLENDALE  AZ 85304

Interest Rate: 4.625%
Prepayment Penalty: No

Modification Date: N/A
Maturity Date: 07/01/2048

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $212.61 |
| Interest: | $529.60 |
| Escrow: | $487.55 |
| (Taxes and/or Insurance)* | |
| **Reg. Monthly Payment:** | **$1,229.76** |
| Overdue Payment: | $21,368.73 |
| Total Fees Charged: | $20.00 |
| **Total Amount Due:** | **$22,618.49** |

## Current Loan Balances

| | |
|---|---|
| Principal Balance*: | $140,703.29 |
| Escrow Balance: | -$7,082.34 |
| Past Due Balance: | $21,368.73 |
| Deferred Balance(s): | N/A |
| Buydown Balance: | N/A |
| Partial Claim: | N/A |
| Negative Amortization: | N/A |
| Unapplied Funds: | $0.00 |

* Your current Principal Balance is not a payoff quote.
See page 4 for Loan Payoff Information.

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance)* | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

* Please see page 4 of this statement for additional information.

---

▲ Please detach and return with your payment ▲



Make a payment at **CarringtonMortgage.com.**
Pay by Check or AutoPay for free!

Loan Number: 7000295219
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE  AZ 85304

**Amount Due**                    **$22,618.49**
Due Date:                            07/01/21

Late charge if received after 07/16/21:                    $0.00
Late Payment Amount if received after 07/16/21:      $22,618.49

CARRINGTON MORTGAGE SERVICES LLC
PO BOX 660586
Dallas, TX 75266-0586

| | | |
|---|---|---|
| Payment Due | $ | . |
| Additional Principal | $ | . |
| Additional Escrow | $ | . |
| Late Charge | $ | . |
| Total Amount Enclosed | $ | . |

066058670002952190022618490022618493

# EXHIBIT 3

# CARRINGTON
**MORTGAGE SERVICES, LLC**
NMLS ID 2600

**Loan Number:** 7000295219
**Notice Date:** 10/21/2022

**Home Liquidation Assistance Notice**

P.O. Box 3010
Anaheim, CA 92803

0002998   01 MB 0.515  **AUTO  T3 0 9352 85304-387327   -C01-P03000-I
MICHAEL W BERGSTROM
5627 W SAGUARO DR.
GLENDALE AZ 85304-3873

**Property Address:**
5627 W SAGUARO DR
GLENDALE, AZ 85304

[barcode]

ılıllıllı||ıılılılılılılılılı|ılılı|ılılılılı

10/21/2022

## Home Liquidation Assistance

Dear MICHAEL W BERGSTROM:

Carrington Mortgage Services, LLC ("CMS") recently cancelled the home retention workout you were offered because you either failed to meet the program requirements or voluntarily opted out. You are receiving this notification because you may be eligible to participate in other foreclosure prevention options such as a short sale or deed-in-lieu of foreclosure (herein referred to as "Home Liquidation").

If you are interested in pursuing a Home Liquidation option, please contact us by no later than 11/18/2022. Please note there will be additional documentation that you will be required to provide us in order to be considered.

**IMPORTANT:** Our goal is to provide you with the assistance you need; however the investor and/or owner of your loan may have certain credit requirements that can impact your eligibility for Home Liquidation.

Please contact us during normal business hours. To speed the process, it is important that you have your account number when you call.

Special Servicing Department
(Phone): 1.877.267.1221
(Hours): Monday through Friday from 6:00AM to 5:00PM (Pacific Standard Time)

Sincerely,

Carrington Mortgage Services, LLC

# EXHIBIT 4



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

**Date:  July 23, 2021**

**Mortgagee Letter 2021-18**

**To:**     All FHA-Approved Mortgagees
          All Direct Endorsement Underwriters
          All Eligible Submission Sources for Condominium Project Approvals
          All FHA Roster Appraisers
          All FHA-Approved 203(k) Consultants
          All HUD-Approved Housing Counselors
          All HUD-Approved Nonprofit Organizations
          All Governmental Entity Participants
          All Real Estate Brokers
          All Closing Agents

| | |
|---|---|
| **Subject** | COVID-19 Recovery Loss Mitigation Options |
| **Purpose** | The purpose of this Mortgagee Letter (ML) is to inform Mortgagees of the establishment of the COVID-19 Recovery Loss Mitigation Options (COVID-19 Recovery Options). |
| **Effective Date** | The policies in this ML may be implemented immediately but must be implemented no later than 90 Days from the date of publication of this ML.

This does not impact previously announced effective dates for the COVID-19 Advance Loan Modification (COVID-19 ALM). |
| **Public Feedback** | HUD welcomes feedback from interested parties for a period of 30 calendar days from the date of issuance. To provide feedback on this policy document, please send feedback to the FHA Resource Center at answers@hud.gov. HUD will consider the feedback in determining the need for future updates. |
| **Affected Programs** | This guidance applies to all FHA Title II Single Family forward mortgage programs. |

The COVID-19 Recovery Non-Occupant Loan Modification replaces the COVID-19 Non-Occupant Loan Modification.

The COVID-19 Recovery Standalone Partial Claim is a zero-interest subordinate lien for a Borrower's arrearages. This option is available for Borrowers who affirm they can resume their existing monthly mortgage payment. In order to preserve flexibility to provide loss mitigation options for natural disasters and other default episodes that may arise in the future, the COVID-19 Recovery Standalone Partial Claim is limited to 25 percent of the Borrower's unpaid principal balance as of the date of Default at the time of payment of the initial Partial Claim.

The COVID-19 Recovery Modification is a 360-month loan modification, which must include a Partial Claim, if available. A Partial Claim as part of a COVID-19 Recovery Modification is limited to 25 percent of the Borrower's unpaid principal balance as of the date of Default at the time of payment of the initial Partial Claim.

HUD is requiring Mortgagees to use the most recent Freddie Mac Weekly Primary Mortgage Market Survey (PMMS) interest rate, rounded to the nearest one-eighth of 1 percent (0.125 percent) for the COVID-19 Recovery Modification and the COVID-19 Recovery Non-Occupant Loan Modification. This removes the additional 25 Basis Points (bps) currently permitted to provide additional payment relief to Borrowers.

The revised COVID-19 Recovery Options will provide a path to deep and sustained recovery for Borrowers who were significantly impacted by the pandemic. The pandemic has caused a lengthy period of instability that has deeply impacted FHA homeowners requiring a streamlined approach to ensure Borrowers remain in their homes whenever possible. FHA anticipates these COVID-19 Recovery Options will particularly help low-income households, first-time homeowners, and households of color that have been disproportionately impacted by the pandemic. FHA encourages Mortgagees and Borrowers alike to utilize the extensive network of HUD-approved Housing Counselors to help explain and expedite this additional relief.

The American Rescue Plan Act of 2021 established the Homeowner Assistance Fund (HAF) in the U.S. Department of the Treasury in order to provide financial assistance to eligible homeowners who have suffered financial hardships during the COVID-19 National Emergency. Qualified expenses may include mortgage payment assistance, mortgage reinstatement, utilities, insurance, and other housing-related costs. Mortgagees must inform Borrowers suffering financial distress that these additional resources may be available through their state. As permitted by the jurisdiction's HAF program, HAF funds may be used in connection with the Borrower's FHA-insured mortgage or any partial claim mortgage in a manner consistent with the respective

3

mortgage documents and FHA requirements. More information on HAF is available at: https://home.treasury.gov/policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/homeowner-assistance-fund.

**Summary of Changes**

This ML establishes the COVID-19 Recovery Home Retention Options and associated Single Family Default Monitoring System (SFDMS) Status Codes, which include the following:

- COVID-19 Recovery Standalone Partial Claim;
- COVID-19 Recovery Modification; and
- COVID-19 Recovery Non-Occupant Loan Modification.

The following COVID-19 Loss Mitigation Options are being replaced:

- COVID-19 Standalone Partial Claim;
- COVID-19 Owner-Occupant Loan Modification;
- COVID-19 Combination Partial Claim and Loan Modification;
- COVID-19 FHA-HAMP Combination Loan Modification and Partial Claim with Reduced Documentation; and
- COVID-19 Non-Occupant Loan Modification.

This ML streamlines the requirements for the COVID-19 Pre-Foreclosure Sale.

This ML also establishes the deadline by which Borrowers who have not been on a COVID-19 Forbearance may request COVID-19 loss mitigation assistance.

**Single Family Housing Policy Handbook 4000.1**

The above policy changes will be incorporated into Handbook 4000.1 as appears below.

**Presidentially-Declared COVID-19 National Emergency (III.A.2.o)**

**Loss Mitigation for Borrowers Affected by the COVID-19 National Emergency**

The following loss mitigation options are available to assist Borrowers impacted, directly or indirectly, by COVID-19:

- COVID-19 Forbearance;
- COVID-19 Advance Loan Modification;
- COVID-19 Recovery Standalone Partial Claim;
- COVID-19 Recovery Modification;
- COVID-19 Recovery Non-Occupant Loan Modification;
- COVID-19 Pre-Foreclosure Sale; and
- COVID-19 Deed-in-Lieu of Foreclosure.

4

**(B) Eligibility**

The Property may be owner-occupied or non-owner occupied.

The Borrower must be 90 or more Days Delinquent.

A 30-year Loan Modification at the most recent Freddie Mac Weekly Primary Mortgage Market Survey (PMMS) Rate rounded to the nearest one-eighth of 1 percent (0.125 percent) will achieve a minimum 25 percent reduction in the Borrower's monthly P&I.

**(C) Standard**

Mortgagees must review Borrowers for the COVID-19 ALM as follows:
- The Mortgagee must review all Borrowers on a COVID-19 Forbearance for a COVID-19 ALM within 30 Days of the expiration of the Forbearance.
- Borrowers who are 90 or more days delinquent and not on a COVID-19 Forbearance must be considered for a COVID-19 ALM through the termination of the COVID-19 National Emergency.
- No later than August 24, 2021, the Mortgagee must review the following Borrowers for a COVID-19 ALM where the Mortgagee has not yet sent out the final documents to the Borrower to complete a Loss Mitigation Option as of June 25, 2021:
  - Borrowers who have exited or requested to exit their COVID-19 Forbearance;
  - Borrowers whose COVID-19 Forbearance has expired or will expire by August 24, 2021; or
  - Borrowers who were not on a COVID-19 Forbearance.

If the Borrower is eligible, the Mortgagee must:
- prepare and send out the Loan Modification documents to the Borrower; and
- provide a cover letter that includes:
  - an explanation of terms including the modified Mortgage Payment amount;
  - the date the next payment is due;
  - a statement that no lump sum payment is required;
  - a statement that if the Borrower does not accept this offer, this does not prevent them from obtaining another Loss Mitigation Option to bring their Mortgage current;

o a statement that the Borrower must sign and return the Loan Modification documents within 30 Days of receipt of the documents; and

o information for the Borrower to contact the Mortgagee, if needed.

The Mortgagee does not have to contact the Borrower prior to reviewing the Borrower for the COVID-19 ALM or sending out the modification documents.

Borrowers who do not qualify for the COVID-19 ALM or who do not complete and return the signed COVID-19 ALM Loan Modification documents must be evaluated for the COVID-19 Recovery Options.

**(D) Terms**

The Mortgagee must ensure that:

- the COVID-19 ALM achieves a minimum 25 percent P&I monthly payment reduction;
- the modified Mortgage is a fixed rate Mortgage;
- the interest rate of the modified Mortgage is the PMMS Rate rounded to the nearest one-eighth of 1 percent (0.125 percent);
- the term for the modified Mortgage is 360 months;
- the COVID-19 ALM only capitalizes arrearages, which refers to any amounts needed to bring the Borrower current and includes:
  o unpaid accrued interest;
  o Mortgagee advances for escrow items;
  o projected escrow shortage amount;
  o related legal fees and foreclosure and bankruptcy costs not higher than the foreclosure-related fees and costs HUD has identified as customary and reasonable; and
  o Mortgagees may include an additional month in the total outstanding debt to be resolved to allow time for the Borrower to return the executed Loan Modification documents before the modified Mortgage Payment begins;
- the COVID-19 ALM fully reinstates the Mortgage; and
- all Late Charges, fees, and penalties are waived except that Mortgagees are not required to waive Late Charges, fees, and penalties, if any, accumulated prior to March 1, 2020.

HUD does not provide a model for COVID-19 ALM documents, but the Mortgagee must ensure the FHA-insured Mortgage remains in first lien position and is legally enforceable.

**(E) Required Documentation**

**(1) Servicing File**

For those Borrowers that were sent an offer for a COVID-19 ALM, a copy of the cover letter and Loan Modification documents must be retained in the Servicing File.

Mortgagees are not required to note in each individual Borrower's file if the Borrower does not qualify for the COVID-19 ALM.

**(2) Reporting to HUD**

The Mortgagee must report the use of the COVID-19 ALM in SFDMS using Default Reason Code 055 and Default Status Code 3A – Advance Modification Started.

If the Borrower does not return the executed documents within 30 Days, the Mortgagee must report Default Status Code AQ – Option Failure.

The Mortgagee must report the characteristics of the non-incentivized COVID-19 ALM, including the rate and term, in FHAC within 90 Days of the executed COVID-19 ALM.

### iii. COVID-19 Recovery Loss Mitigation Options

**(A) Definition**

The COVID-19 Recovery Loss Mitigation Options (COVID-19 Recovery Options) provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and may reduce the P&I portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery.

The COVID-19 Recovery Options are not incentivized for Mortgagees.

**(B) Standard**

The Mortgagee must review eligible Borrowers for the COVID-19 Recovery Options. Eligible Borrowers may receive more than one COVID-19 Recovery Option.

**(1) Borrowers who were on a COVID-19 Forbearance**

The Mortgagee must review all Borrowers who were on a COVID-19 Forbearance for the COVID-19 Recovery Options after the completion or expiration of the Borrower's forbearance period.

10

Mortgagees may review the Borrower for the COVID-19 Recovery Options prior to the completion or expiration of the Borrower's forbearance period. A Borrower does not need to exit their forbearance to be reviewed for the COVID-19 Recovery Options.

The Mortgagee must complete a loss mitigation option for these Borrowers no later than 120 Days from the earlier of the date of completion or expiration of the forbearance. The 120-Day period to complete a loss mitigation option includes the COVID-19 ALM. For Home Disposition Options, a signed Approval to Participate (ATP) Agreement (form HUD-90045) or a signed DIL Agreement will meet this requirement.

**(2) Borrowers who were not on a COVID-19 Forbearance**

The Mortgagee must review all Borrowers who did not participate on a COVID-19 Forbearance for the COVID-19 Recovery Options when the Borrower is 90 or more Days Delinquent and the Borrower affirms they have been negatively impacted by COVID-19. These Borrowers may request COVID-19 loss mitigation assistance through the termination of the COVID-19 National Emergency.

The Mortgagee must complete a loss mitigation option for these Borrowers no later than 120 Days from the date of the Borrower's request for loss mitigation assistance. The 120-Day period to complete a loss mitigation option includes the COVID-19 ALM. For Home Disposition Options, a signed ATP Agreement (form HUD-90045) or a signed DIL Agreement will meet this requirement.

The Mortgagee must document the date of the request for loss mitigation assistance in the Servicing File.

**(3) Re-Review of Borrowers**

The Mortgagee must re-review the following Borrowers and implement the COVID-19 Recovery Options no later than October 21, 2021, if:
- the Mortgagee has not yet sent out the final documents to the Borrower to complete one of the COVID-19 Home Retention Options found in ML 2021-05 as of August 22, 2021;
- the Borrower was not eligible for a COVID-19 Home Retention Option; or

11

- the Borrower became Delinquent due to the COVID-19 pandemic after reinstating using a COVID-19 Home Retention Option.

The Mortgagee has 120 Days to complete a loss mitigation action.

**(4) Homeowner Assistance Fund**

The Mortgagee must inform the Borrower, utilizing any available method of communication, that they can apply for the Department of Treasury's Homeowner Assistance Fund (HAF), if HAF is available in their jurisdiction.

As permitted by the jurisdiction's HAF program, HAF funds may be used in connection with the Borrower's FHA-insured Mortgage or any Partial Claim Mortgage in a manner consistent with the respective mortgage documents and FHA requirements.

**(C) COVID-19 Recovery Home Retention Options**

A Trial Payment Plan (TPP) is not required for a Borrower to be eligible for the COVID-19 Recovery Options.

**(1) COVID-19 Recovery Standalone Partial Claim**

The COVID-19 Recovery Standalone Partial Claim reinstates the Mortgage through the use of a Partial Claim for Borrowers impacted by COVID-19 who are able to resume their Mortgage Payments.

The Mortgagee must evaluate Owner-Occupant Borrowers impacted by COVID-19 for a COVID-19 Recovery Standalone Partial Claim.

**(a) Eligibility**

The Mortgagee must ensure that:
- the Borrower indicates they have the ability to resume making on-time Mortgage Payments; and
- the Property is owner-occupied.

**(b) Terms**

The Mortgagee must ensure that:
- the COVID-19 Recovery Standalone Partial Claim fully reinstates the Mortgage;
- the COVID-19 Recovery Standalone Partial Claim amount includes only arrearages, which refers to any

12